UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
SUZANNE M. PEMRICK,

          Plaintiff,

   - against -

ALFRED STRACHER, et al.,

          Defendants.
--------------------------------------------------X

**MEMORANDUM
AND    ORDER**

92 CV 959 (CLP)

By notice of motion dated September 10, 2003, plaintiff Suzanne Marie Pemrick, Ph.D.,

proceeding pro se, seeks authorization to file a Revised Fourth Amended Complaint in the

above-captioned action, adding state law claims of conversion and replevin against John Allen

("Allen"), Peter French ("French"), Alfred Stracher ("Stracher"), and Richard Schwarz

("Schwarz"), who were employed at the time in question by the Brooklyn branch of the State

University of New York ("SUNY") and/or by the Research Foundation of the State University of

New York ("Research Foundation"). (See Revised Fourth Am. Compl. ¶¶ 39–43). Defendants

object to plaintiff's motion to add claims against these individually named defendants, arguing

that the claims are barred by the statute of limitations and that their addition, at this late date,

would be highly prejudicial to the defendants.

For the foregoing reasons, this Court denies plaintiff's request to add claims against the

individually named defendants.

The underlying facts are set forth in this Court's earlier Memorandum and Order dated January 13, 2005. Certain salient facts will be repeated to put plaintiff's most recent motion in context.

From 1978 to 1988, Dr. Pemrick was employed by SUNY as an Assistant Professor (non-tenure track) in the Biochemistry Department. (See EEOC Compl. # 1).[1] With the support of the Research Foundation, which "exists to provide administrative support to [SUNY] in obtaining and administering research, public service and training grants and contracts" (Allen Dep. at 8),[2] Dr. Pemrick applied for and received research grants from the National Institute of Health ("NIH") and the Muscular Dystrophy Association ("MDA"). (Revised Fourth Am. Compl. ¶ 24). With the funds received from these grants, Dr. Pemrick purchased certain laboratory equipment and materials, allegedly valued at approximately $300,000, which she used in connection with her ongoing research projects. (Id. ¶¶ 24, 26).

In the spring of 1987, plaintiff received notice from SUNY Brooklyn that her appointment as an Assistant Professor of Biochemistry and Biophysics had been terminated. (First Am. Comp. at 14). According to plaintiff, on or about September 11, 1987, plaintiff and SUNY Brooklyn signed an agreement which provided, in part, that Dr. Pemrick would be

---

[1] Citations to "EEOC Compl. # 1" refer to the first EEOC complaint filed by Dr. Pemrick on February 9, 1989, which is attached as an exhibit to the First Amended Complaint ("First Am. Compl.") at page 8. Citations to "EEOC Compl. # 2" refer to Dr. Pemrick's second EEOC complaint filed on February 9, 1989, which is attached as an exhibit to the First Amended Complaint at page 11.

[2] Citations to "Allen Dep." refer to the transcript of John M. Allen's deposition, which was taken on August 6, 1998.

permitted to use the laboratory in which the equipment was stored until at least August 31, 1988. (Id. ¶ 28).

Plaintiff alleges that on or about October 1, 1988, while her NIH project was still active and under competitive review, SUNY and the Research Foundation removed the equipment and materials from the laboratory and moved them into storage. (Id. ¶¶ 29, 32, 35). Despite repeated requests that SUNY and the Research Foundation provide her with an accurate inventory of the equipment, her requests were refused. (Id. ¶ 30). Plaintiff claims that, without her permission, defendants abused, damaged, lost, misplaced, misappropriated and/or deliberately re-distributed the laboratory equipment within 30 days of storing the equipment. (Id. ¶¶ 31, 33). Plaintiff further alleges that from 1989 to 1990, while plaintiff continued to work in a scientific capacity at SUNY Brooklyn, defendants allegedly refused to allow Dr. Pemrick access to her equipment. (Revised Fourth Am. Compl. ¶ 36). According to plaintiff, her grant renewal application, her research project and her ability to relocate to another scientific institution were damaged by the defendants' improper handling of the equipment. (Id. ¶ 38).

On or about July 1, 1990, plaintiff, proceeding pro se, commenced this action against defendants Alfred Stracher and Richard Schwarz in the Northern District of New York, alleging that she was denied a tenure track position as an Assistant Professor due to age discrimination.[3]

---

[3] Plaintiff had previously filed two complaints with the Equal Employment Opportunity Commission ("EEOC"), on February 9, 1989, claiming employment discrimination by her employer, SUNY Brooklyn. (EEOC Compl. # 1; EEOC Compl. # 2). (Id.) In one of the two EEOC complaints, plaintiff alleged that the position was ultimately filled by a younger candidate and that she was the victim of age discrimination. (EEOC Compl. # 1; see also First Am. Compl. at 13). In the other EEOC complaint, plaintiff alleged that the position was filled by a male and that she was the subject of sex discrimination and of retaliation for her role as a women's advocate. (EEOC Compl. # 2; see also First Am. Compl. at 13). The EEOC ultimately determined that there was no reasonable cause to find a violation and issued a right to sue letter

3

Although plaintiff's initial pro se narrative Complaint details the acts of discrimination for which each defendant was allegedly responsible, the Complaint makes no reference to the laboratory equipment, nor does it specify either defendant's role in the loss and destruction of that equipment.

On or about March 8, 1991, plaintiff filed her First Amended Complaint, which named SUNY and SUNY Brooklyn as additional defendants, and included an additional charge of sex discrimination. No references to the laboratory equipment were added to the Complaint at that time.

The case was transferred to the Eastern District of New York on or about March 2, 1992, and defendants moved for summary judgment following the completion of discovery. The motion was granted to the extent that certain of the claims against the individual defendants were dismissed with prejudice, but Dr. Pemrick was permitted to pursue her claims of discrimination against her employer.

Thereafter, Dr. Pemrick obtained counsel in December 1999 and filed a Second Amended Complaint on or about March 13, 2000. On or about April 7, 2000, plaintiff filed a Third Amended Complaint in which she added the Research Foundation as a defendant and added new state law claims for conversion, replevin and age discrimination, pursuant to New York Executive Law § 295.[4] (Third Am. Compl ¶¶ 32–38). In this Third Amended Complaint,

---

to plaintiff for each complaint. (EEOC Determination, May 4, 1990, attached as exhibit to Third Amended Complaint at pages 10–11; EEOC Determination, November 23, 1990, attached as exhibit to Third Amended Complaint at page 13).

[4] In response to the Third Amended Complaint, the SUNY defendants and the Research Foundation filed Answers on or about April 17, 2000 and November 22, 2000, respectively.

4

plaintiff asserted that SUNY, SUNY Brooklyn, and the Research Foundation were responsible for the illegal conversion of her laboratory equipment. There were no allegations in the Third Amended Complaint naming the individual defendants in the conversion claims, or alleging that either Dr. Schwarz or Dr. Stracher were individually responsible for the loss of the equipment.

Beginning on April 24, 2000, a seven-day bench trial was held before the Honorable Joanna Seybert. Since the Research Foundation was named as a defendant only in the claims for conversation and replevin (see Third Am. Comp. at 1), those claims were severed from the other claims and were accordingly not addressed during the trial before Judge Seybert. (See Research Mem. at 2).

On September 24, 2000, Judge Seybert entered judgment in favor of defendants Stracher, Schwarz, SUNY, and SUNY Brooklyn with respect to Dr. Pemrick's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) et seq., and the New York State Human Rights Law. (See Order of Nov. 20, 2002 (clarifying that the judgment entered only applied to certain of plaintiff's claims)).

On March 7, 2003, the parties consented to have the case referred to the undersigned for the purpose of resolving plaintiff's remaining claims.

On July 30, 2003, proceeding pro se, Dr. Pemrick submitted a proposed Fourth Amended Complaint, which contained federal claims under 45 C.F.R. § 80 (effectuating Title VI of the Civil Rights Act of 1964) and 45 C.F.R. § 74.34 (governing title to equipment). In her proposed Fourth Amended Complaint, Dr. Pemrick alleged that the defendants seized, misused, abused and lost certain laboratory equipment and materials, valued at $300,000.00, which Dr. Pemrick purchased with funds from research grants awarded to her by the NIH and MDA. (See Fourth

5

Am. Compl. ¶¶ 24, 29, 31). Thereafter, on November 10, 2003, plaintiff submitted a Revised

Fourth Amended Complaint, in which she voluntarily withdrew the claim under 45 C.F.R. § 80.

(Compare Fourth Am. Compl. ¶¶ 46–47 with Revised Fourth Am. Compl. ¶¶ 46–47). On

January 13, 2005, this Court issued an order denying plaintiff's motion to amend to add claims

under 45 C.F.R. § 74.34 on the ground of futility. (See Mem. & Order at 16).

Plaintiff now seeks to add state law claims of conversion and replevin for the seizure,

misuse, abuse and loss of the equipment purchased with funds from the NIH and MDA research

grants. She seeks to bring these claims against defendants Stracher and Schwarz, who were

named in the original discrimination claims, but who were dismissed as defendants in November

1999 and then renamed in the plaintiff's Second Amended Complaint in March 2000, only to

have the court render judgment in their favor in 2003, again dismissing all claims against them.

Plaintiff also seeks to add claims against two new defendants, Peter French and John Allen.[5]

Plaintiff alleges all four individually named defendants neglected to follow the property

management standards established for equipment and materials acquired with federal funds.

(Revised Fourth Am. Compl. at ¶¶ 39–43). As plaintiff explained in her reply papers filed in

connection with this motion, she seeks to add conversion and replevin claims against these

individual defendants in order to avoid SUNY's defense of Eleventh Amendment immunity.

(See Pl.'s Reply Mot. at 3; see also SUNY Letter of Aug. 5, 2003 at 2).

Defendants object to the motion to amend on grounds of timeliness and prejudice.

---

[5] In her original motion papers, plaintiff also sought to add a fifth defendant, Stephen
Kass. However, in her letter reply dated April 3, 2005, plaintiff withdrew her request to add Mr.
Kass. (See Pl's. Reply Letter dated Apr. 3, 2005 ("Pl's. Reply") at 1).

## DISCUSSION

A. Standards

Rule 15(a) of the Federal Rules of Civil Procedure provides that an amendment as of

right may be made at any time prior to the service of a responsive pleading. Fed. R. Civ. P.

15(a); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). "[I]f the

amendment affects all defendants or one or more of those that have not responded, then it

generally is held that a 'responsive pleading' has not been served for purposes of Rule 15(a) and

plaintiff may amend the complaint as of course with regard to those defendants that have not

answered." Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6 Fed. Prac. & Proc.

Civ.2d § 1481 (2d ed. 1990); see Pallant v. Sinatra, 7 F.R.D. 293, 299–300 (S.D.N.Y. 1945)

(allowing plaintiff to serve amended complaint without first seeking leave of court, where two

defendants had not answered original complaint).

Once a response to a complaint has been filed, a plaintiff may amend the complaint "only

by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). However,

the Rule that "leave shall be freely given when justice so requires" has been liberally construed.

Id.; see Foman v. Davis, 371 U.S. 178, 182 (1962). As the Second Circuit noted, "[t]he Rule

reflects two of the most important principles behind the Federal Rules: pleadings are to serve the

limited role of providing the opposing party with notice of the claim or defense to be litigated, . .

. and 'mere technicalities' should not prevent cases from being decided on the merits." Monahan

v. N.Y. City Dep't of Corrections, 214 F.3d 275, 283 (2d Cir.) (internal citations omitted), cert.

denied, 531 U.S. 1035 (2000); see also Chapman v. YMCA of Greater Buffalo, 161 F.R.D. 21,

24 (W.D.N.Y. 1995) (noting that "[t]he stated purpose of Rule 15 is to allow a party to correct an

7

error that might otherwise prevent the court from hearing the merits of the claim").

Although the decision whether to grant a plaintiff's motion to file an amended pleading remains within the court's discretion, see John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994), an amendment should not be allowed where there has been bad faith, dilatory motives, where the amendment would be futile, or would cause undue delay or undue prejudice to the opposing party. See Foman v. Davis, 371 U.S. at 182; Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995); John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d at 462; Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1198 (2d Cir. 1989). "The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." Fariello v. Campbell, 860 F. Supp. 54, 70 (E.D.N.Y.) (citing Panzella v. Skou, 471 F. Supp. 303, 305 (S.D.N.Y. 1979)), aff'd, Fariello v. Rodriguez, 22 F.3d 1090 (2d Cir. 1994). However, where there has been "inordinate delay," the party seeking to amend bears the burden of proof. See Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) (stating that the party who wishes to amend bears the burden to provide a satisfactory explanation for the delay, and the court is free to conclude that ignorance of law is an unsatisfactory excuse), cert. denied, 505 U.S. 1222 (1992); Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983) (stating that dilatory party has burden to prove compelling reasons for delay).

Among the factors to be considered by the court in deciding whether to grant leave to amend is whether the amendment would be futile because it fails to state a claim. See Chapman v. YMCA of Greater Buffalo, 161 F.R.D. at 23. When a proposed amendment is objected to on the ground of legal insufficiency, the court should apply the same test that is used to evaluate a

pleading challenged under Rule 12(b)(6) or 12(f) of the Federal Rules of Civil Procedure. See id.

Thus, this Court must accept all well-pleaded allegations in the complaint as true and construe

the complaint liberally in the light most favorable to the plaintiff. See Hernandez v. Coughlin,

18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836 (1994); Charles Alan Wright, Arthur R.

Miller & Mary Kay Kane, 5B Fed. Prac. & Proc. Civ.2d § 1357 (3d ed. 2004). If there is no set

of facts that, if proved, would constitute a valid and sufficient claim as amended, the court should

deny leave to amend. See Chapman v. YMCA of Greater Buffalo, 161 F.R.D. at 23.

 The court must also consider whether the amendment would cause undue prejudice to the

opposing party. See Block v. First Blood Assocs., 988 F.2d at 350. In determining what

constitutes prejudice, the court must examine whether the assertion of the new claims would:

"(i) require the opponent to expend significant additional resources to conduct discovery and

prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff

from bringing a timely action in another jurisdiction." Id. "Mere delay, . . . absent a showing of

bad faith or undue prejudice, does not provide a basis for a district court to deny the right to

amend." Id. (quoting State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)).

However, "'the longer the period of an unexplained delay, the less will be required of the

nonmoving party in terms of a showing of prejudice.'" Id. (quoting Evans v. Syracuse City Sch.

Dist., 704 F.2d at 47).


B. Timeliness and Relation Back

 Defendants' first argument in objecting to the addition of these individual defendants is

that New York's three year statute of limitations bars these claims, rendering the amendment

futile.

The New York statute of limitations governing claims for conversion and replevin is three years. C.P.L.R. § 214(3); see also Gold Sun Shipping Ltd. v. Ionian Transp. Inc., 245 A.D.2d 420, 421, 666 N.Y.S.2d 677, 678 (2 Dep't 1997). The cause of action accrues from the date the conversion or replevin occurs. See Sporn v. MCA Records, 58 N.Y.2d 482, 488, 462 N.Y.S.2d 413, 416, 448 N.E.2d 1324, 1327 (N.Y. 1983) (conversion); Solomon R. Guggenheim Found. v. Lubell, 153 A.D.2d 143, 146, 550 N.Y.S.2d 618, 620 (1st Dep't 1990) (replevin). Here, the alleged conversion of Dr. Pemrick's laboratory equipment occurred in 1988. Thus, the claims against the individual defendants are timely only if they "relate back" to the plaintiff's original complaint filed in 1990. See Fed. R. Civ. P. 15(c)(3).


1) Fed. R. Civ. P. 15(c)(2)

An amendment to add new claims to a pleading relates back if the new "claim . . . asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). If the new allegations simply amplify the facts alleged in the original pleading or allege those facts with greater specificity, then the new allegations will relate back. See Oliner v. McBride's Indust., Inc., 106 F.R.D. 9, 12 (S.D.N.Y. 1985); see also Conteh v. City of N.Y., No. 00 CV 5787, 2001 WL 736783, at *3 (S.D.N.Y. Jun. 28, 2001). Where, however, the allegations "go beyond such amplification, the critical question is whether the amended pleading gave the defendant fair notice of the material subsequently raised in the amended pleading." Oliner v. McBride's Indus., Inc., 106 F.R.D. at 12 (citing Rosenberg v. Martin, 478 F.2d 520, 526–27 (2d Cir. 1973).

As an initial matter, the Court must first determine whether the claims sought to be asserted arose out of the same "conduct, transaction or occurrence" set forth in the plaintiff's original complaint. Fed. R. Civ. P. 15(c)(2). Plaintiff argues that this issue was previously decided by the district court at the time the court considered the defendants' motion for summary judgment. (See Pl's. Reply at 3). At that time, the court found that the conversion and replevin claims were "explicitly" related to the claims asserted in the EEOC charges and thus, under Butts v. City of N.Y. Dept. of Hous. Pres. & Dev., 990 F.2d 1397, 1402 (2d Cir. 1993) (discussing types of "reasonably related" claims), those claims were cognizable in this federal lawsuit. Pemrick v. Stracher, 67 F. Supp. 2d 149, 170 (E.D.N.Y. 1999). Indeed, in the 1999 Pemrick opinion, the district court expressly noted a willingness to "consider a motion by the plaintiff for leave to amend the complaint to assert a pendant state law claim for conversion, trespass to chattels, and/or replevin," even though the claim was "not set forth explicitly in the amended complaint." Id. at 170 n.16. The Second Amended Complaint, which raised claims of conversion against the institutional defendants, was subsequently accepted by the court for filing.

Accordingly, for purposes of this motion, the Court finds that plaintiff has satisfied the requirements of Rule 15(c)(2) and that it is the law of the case that these conversion and/or replevin claims are part of the same conduct, transaction or occurrence as the discrimination claims set forth in the original Complaint.

2) Fed. R. Civ. P. 15 (c)(3)

Where the amendment seeks to add new parties to the action, Rule 15(c)(3) governs the issue of whether the amendment will "relate back" to the date of the original pleading. Under

Rule 15(c)(3), an amendment adding new parties will relate back to the original complaint only if the plaintiff can establish that:

> (1) the claim or defense asserted in the Amended Pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; (2) the party to be brought in by the amendment has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits; (3) the party knew or should have known that but for a mistake in the identity of the proper party, the action would have been brought against the party; and (4) the conditions in (2) and (3) occurred within 120 days of the filing of the original complaint.

Conteh v. City of N.Y., 2001 WL 736783, at \*2; see Fed. R. Civ. P. 15 (c)(3); see also Soto v. Brooklyn Corr. Facility, 80 F.3d 34, 35 (2d Cir. 1996) (applying relation-back analysis).


a) Mistake

Plaintiff's amended complaint may only relate back to the original pleading if she can establish that her failure to assert claims against these defendants was due to a "mistake concerning the identity of the proper party." Fed. R. Civ. P. 15(c)(3)(B). The Rule has been interpreted to encompass both mistakes of fact as well as of law. Mosely v. Jablonsky, 209 F.R.D. 48, 51–52 (E.D.N.Y. 2002); see also Cornwell v. Robinson, 23 F. 3d 694, 705 (2d Cir. 1994) (holding that the requirement that the defendant "knew" he was not named due to a mistake "presupposes that in fact the reason for his not being named was a mistake in identity"). In Soto v. Brooklyn Corr. Facility, 80 F.3d at 35–36, the Court made it clear that the concept of "mistake" also applied where a pro se plaintiff was required to name individual police officers as defendants to preserve the viability of a Section 1983 claim. In holding that plaintiff's "mistake" was "as to the technicalities of constitutional tort law," the Court noted that "the language [of this

subsection] was prompted by several cases in which plaintiffs, unaware of the technical requirements of the law, mistakenly named institutional instead of individual defendants." Id. at 35–36 (citing cases). Thus, where the plaintiff can show that she misapprehended the identity of the person she wished to sue (a factual mistake), or failed to understand the legal requirements of her claim (a legal mistake), then the claim satisfies the "mistake" requirement of Rule 15(c)(13) and relates back to the original pleading. Id. at 36.


  b) Prejudice

  Even if plaintiff can satisfy the requirement of showing "mistake," she must also satisfy the limiting provision of Rule 15(c)(3)(A) before a motion to add new parties may be granted. This provision allows the relation back of claims against new defendants only if the new defendants received "such notice of the institution of the action that [they] will not be prejudiced in maintaining a defense on the merits." Fed. R. Civ. P. 15(c)(3)(A); see also Soto v. Brooklyn Corr. Facility, 80 F.3d at 37. The notice required must be such that "'a reasonably prudent person[ ] ought to have been able to anticipate or should have expected that the character of the originally pleaded claim might be altered or that other aspects of the conduct, transaction or occurrence set forth in the original pleading might be called into question.'" Woods v. Indiana Univ.-Purdue Univ. at Indianapolis, 996 F.2d 880, 888 (7th Cir. 1993) (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6 Fed. Prac. & Proc. Civ. 2d §1497 at 91–93); see also Blaskiewicz v. County of Suffolk, 29 F. Supp. 2d 134 (E.D.N.Y. 1998) (finding informal and constructive notice sufficient and non-prejudicial); Jones v. N.Y. State Div. of Military & Naval Affairs, No. 93 CV 0862, 1997 WL 266765, at *5 (N.D.N.Y. May 7, 1997) (applying the

13

Woods test for notice and prejudice); Candelaria v. Coughlin, No. 93 CV 3212, 1997 WL 171256, at *7 (S.D.N.Y. Apr. 10, 1997) (same).

## C. Application - Defendants French and Allen

Plaintiff's motion to add Messrs. French and Allen as new defendants is denied because plaintiff has failed to satisfy the third requirement of the Rule: namely, that these individuals should have known that, but for a mistake regarding their identities, a claim for conversion would have been brought against them in the original complaint. See Lambert v. N.Y.S. Office of Mental Health, No. 97 CV 1347, 2000 WL 863461, at *3 (E.D.N.Y. June 9, 2000) (holding that party's claim against proposed new defendants failed because plaintiff had not even advanced an argument on the third requirement).

First, although plaintiff explains that both Mr. French and Mr. Allen held titles simultaneously in the Research Foundation and in SUNY, and thus she was unsure as to which entity was their employer, she does not establish that her failure to name them was due to a "mistake" as to their identities, nor does she explain why she waited twelve years to name them. Indeed, Mr. Allen, a Research Foundation employee, was deposed in 1998 and testified at the bench trial in April 2000. (Research Foundation Letter of Feb. 4, 2005 at 2). Clearly, plaintiff must have known about Mr. Allen at the time he was deposed in 1998, yet she did not seek to add him as a party until now. Plaintiff has provided no explanation as to why neither Mr. Allen nor Mr. French was named as a defendant in the original action, nor does she explain the basis for alleging that either Mr. Allen or Mr. French have any possible individual liability for the conversion of the equipment.

14

Moreover, unlike the situation in Soto v. Brooklyn Corr. Facility, 80 F.3d at 37, where plaintiff misapprehended the need to sue individuals in order to pursue his claim against the municipality, rendering the claim legally insufficient in the absence of a named individual, here plaintiff's complaint was legally sufficient. The law of conversion permits a claim to be brought directly against an entity, even in the absence of a claim or claims against specific individuals. See, e.g., Lake v. R. Homes Corp., 304 A.D.2d 533, 757 N.Y.S.2d 467 (2d Dep't 2003) (bringing suit solely against corporation). See also Cornwell v. Robinson, 23 F.3d at 705 (stating "[Plaintiff] was not required to sue [the individual defendants], and her failure to do so in the original complaint . . . must be considered a matter of choice, not mistake"). As the Second Circuit noted in Tapia-Ortiz v. John Doe, "even when a suit is brought by a pro se litigant, 'an amended complaint adding new defendants [cannot] relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.'" 171 F.3d 150, 152 (2d Cir. 1999) (quoting Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 470 (2d Cir. 1996)). See also Grannini v. City of N.Y., 700 F. Supp. 202, 205 n.4 (S.D.N.Y. 1988) (denying leave to amend to add new parties where plaintiff knew the identity of individuals sought to be added when the complaint was filed). Moreover, unlike the plaintiff in Soto, here Ms. Pemrick was represented by two attorneys for a total of over five years, and as the court in Contek noted, "counsel . . . is presumed to understand the applicable legal requirements for pleading." Conteh v. City of N.Y., 2001 WL 736783, at *3 n.1.

Thus, there was no legal reason why the plaintiff was required to name these individuals and "nothing on the face of the Complaint should have raised a suspicion that [plaintiff] was mistaken as to the identities of the proper parties." Hennelly v. Greenwood Cent. Sch. Dist., No.

15

02 CV 6398P, 2004 WL 1570277, at *4 (W.D.N.Y. June 29, 2004).[6]

Finally, there is no evidence that either Mr. Allen or Mr. French was placed on notice that plaintiff might amend her complaint to hold them responsible for the conversion of plaintiff's laboratory equipment. Although Mr. Allen was deposed in 1998, and was called to testify as a witness at the trial in 2000, that is not sufficient to establish notice as required by the Rule. As for Mr. French, he "has been [a] stranger[ ] to the proceedings," as he was never deposed or called to testify. (See Def.'s Reply Letter dated Feb. 4, 2005, at 1). Defendants assert that Mr. French's name has "come up only in passing, and never in relation to the conversion claim." (Id.) The fact that plaintiff waited more than six years after conducting Mr. Allen's deposition to seek to add Mr. Allen as a party defendant, and had never before focused on Mr. French's role, could have served to lull both into the belief that plaintiff did not consider them to be potential defendants. The fact that these defendants, if added to the action, may seek to be represented by the State Attorney General's Office, which has been representing the institutional defendants to date, does not constitute notice to the individual such that relation back is proper. See, e.g., Woods v. Indiana Univ., 996 F.2d at 889 n.14 (rejecting an argument that relation back is proper where defendants share the same counsel, as the relevant question is whether the defendants in question had notice of their potential liability at the time when they learned of the suit).

---

[6] Plaintiff seems to argue that by naming these individual defendants, she will be able to salvage her claims since SUNY has claimed that it is immune from liability for these claims under the Eleventh Amendment. (Pl's. Reply at 4–5). However, even if the addition of these individuals could somehow cure the Eleventh Amendment problem, plaintiff must still satisfy the requirements of Rule 15(c)(3). Moreover, adding Mr. Allen, a Research Foundation employee, would have no effect on plaintiff's claims against SUNY, and plaintiff still has not explained why she waited more than three years from the filing of her Third Amended Complaint to attempt to cure the problem.

Plaintiff's efforts at this late date to add these two new defendants fail to satisfy the requirements of Rule 15(c)(3).

In Soler v. G&U, Inc., the plaintiffs sought to add twenty-one new additional plaintiffs to the action after the case had been pending for seven years, and after four amendments to the complaint had been filed. 628 F. Supp. 720, 726 (S.D.N.Y. 1986). The court denied the motion to amend to add new plaintiffs, commenting, "[t]here comes a point at which the time to add new parties is exhausted." Id. at 726–27 (citations omitted). See also Cresswell v. Sullivan & Cromwell, 922 F.2d at 72 (denying leave to file third amended complaint, where plaintiffs did not move to amend until seventeen months after filing suit and where only reason offered for delay was that plaintiffs' counsel had been unaware of statute); Armstrong v. McAlpin, 699 F.2d 79, 94 (2d Cir. 1983) (holding that "[t]he district court did not abuse its discretion in refusing to give plaintiffs a fourth attempt to plead"); Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 46 (2d Cir. 1983) (denying leave to amend when motion was filed after two pre-trial conferences and only six days before trial); Kelly v. Wright Med. Tech., Inc., No. 00 CV 8808, 2002 WL 31151341, at *1 (S.D.N.Y. July 30, 2002) (denying leave to amend, noting that plaintiff had amended twice without adding her husband as a party, and that the amendment would require the reopening of discovery and delay resolution of the case).

D. Application - Schwarz and Stracher

Plaintiff argues that since Schwarz and Stracher were named as defendants in the original Complaint, and then, after being dismissed from the action in November 1999, were renamed in the Second Amended Complaint that was filed in March 2000, they must have been aware of

17

their roles in the loss of her laboratory equipment. (Pl's. Reply at 4). Indeed, plaintiff contends

that when both defendants were deposed in 1995, they were questioned about their knowledge of

the lawsuit and of plaintiff's claim of missing equipment. (Id.) Dr. Schwarz was questioned

about his knowledge of plaintiff's complaints in 1988 (see Schwarz Dep. at 60–62),[7] and Dr.

Stracher was questioned about his control of laboratory resources. (See Stracher Dep. at 72–73).[8]

Defendants point out, however, that there was nothing in either the Second Amended

Complaint or the Third Amended Complaint, which added the Research Foundation as a

defendant, that suggests that plaintiff was alleging specific conduct on the part of either Stracher

or Schwarz with respect to the loss of the equipment. (Defs.' Letter of Feb. 1, 2005 at 3).

Defendants contend that "[n]othing in the Third Amended Complaint suggests that either Dr.

Schwarz or Dr. Stracher was the converter, as opposed to literally dozens of other persons who

would have access to the stored equipment and might take it." (Id.) Defendants correctly note

that nothing in either of those prior pleadings put them on notice that they were being held

allegedly responsible for the conversion of plaintiff's equipment.

Again, the Court finds that plaintiff's failure to name the individual defendants does not

constitute either a legal or factual "mistake" sufficient to justify relation back under Fed. R. Civ.

P. 15(c)(3). Certainly, as to defendants Schwartz and Stracher, plaintiff was aware of their

identities at the time of the filing of the original Complaint. Plaintiff admits as much in her reply

papers where she indicates that she named them as defendants in the discrimination claims but

---

[7] Citations to "Schwarz Dep." refer to the Deposition of Richard Schwarz conducted on March 30, 1995 and submitted as Attachment 4 of Dr. Pemrick's Second Amended Complaint.

[8] Citations to "Stracher Dep." refer to the Deposition of Alfred Stracher conducted on March 30, 1995 and submitted as Attachment 3 of Dr. Pemrick's Second Amended Complaint.

never raised any claims against them as to the conversion of her equipment until thirteen years later with the filing of the proposed Fourth Amended Complaint. (Pl's. Reply at 3). Thus, there was no factual mistake as to who the defendants were, nor was there any "legal" mistake in that plaintiff was not required to name individual defendants in order to pursue her conversion claims.

To the extent that plaintiff may be arguing that she is not attempting to add new parties but rather is simply seeking to add new claims against already existing defendants, the Court nonetheless concludes that the amendment to name Stracher and Schwarz as defendants in the conversion claim at this late date must be denied on grounds of undue prejudice. As noted above, an amendment that seeks to add new claims must be evaluated under Rule 15(c)(2) which permits a pleading to relate back if the new claim "arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). Since the district court previously found that plaintiff's conversion claims satisfied the requirements for Rule 15(c)(2), it appears that the claims relate back to the claims in the original complaint. However, defendants Stracher and Schwarz were dismissed from the action prior to the amendment adding the conversion claims. Thus, it is unclear whether Rule 15(c)(2) should apply. Even if plaintiff's motion to add Mr. Stracher and Mr. Schwarz as defendants in the conversion claim was to be considered under Rule 15(c)(2), the Court must still consider whether there has been such a delay in adding them as defendants to these claims that they will suffer undue prejudice if the amendment is permitted.

Although the courts have held that prejudice alone is insufficient to deny leave to amend, if there is a showing of "undue prejudice to the opposing party," then denial may be warranted.

See Randolph-Rand Corp. of N.Y. v. Tidy Handbags, Inc., No. 96 CV 1829, 2001 WL 1286989, at *3 (S.D.N.Y. Oct. 24, 2001) (citing Foman v. Davis, 371 U.S. at 182); see also Saxholm AS v. Dynal, Inc., 938 F. Supp 120, 123 (E.D.N.Y. 1996) (noting that "[a]lthough courts have recognized that prejudice tends to increase with delay,. . . delay alone is seldom reason to deny a motion to amend") (citations omitted). Rather, the question is "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute." Block v. First Blood Assocs., 988 F.2d at 350 (citations omitted). Considering similar facts, the Randolph-Rand Corp. of N.Y. v. Tidy Handbags, Inc., noted that "'a proposed amendment . . . [is] especially prejudicial . . . [when] discovery ha[s] already been completed and [the non-movant] ha[s] already filed a motion for summary judgment.'" 2001 WL 1286989, at *3 (quoting Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998), rev'd on other grounds, 238 F.3d 133 (2d Cir. 2000)).

Here, "delay is counted not in days, but in years." Mosley v. Jablonsky, 209 F.R.D. at 54. Discovery was completed almost six years ago. Indeed, a trial was held on the plaintiff's discrimination claims over five years ago. Plaintiff has provided no reason why she did not seek to name Mr. Schwarz and Mr. Stracher in either the Second Amended or Third Amended Complaints at a time when plaintiff was represented by counsel. At this point, given the absence of a reasonable explanation for the delay and the clear prejudice to these individuals, the Court denies plaintiff's motion to amend to add these four individuals to the conversion and replevin

claims. The Court thus finds it unnecessary to reach the questions raised by plaintiff as to whether defendants waived sovereign immunity or whether judicial estoppel applies.

**SO ORDERED.**

Dated: Brooklyn, New York
      November 4, 2005

Cheryl L. Pollak
United States Magistrate Judge